## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

CROWLEY MARITIME
CORPORATION,

      Plaintiff,

v.                                                    Case No. 3:16-cv-1011-J-32JBT

NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURG, PA.,

      Defendant.

_____

## **O R D E R**

      This insurance coverage dispute is before the Court on Defendant National Union Fire Insurance Company of Pittsburg, Pennsylvania's converted Motion for Summary Judgment, (Doc. 15), to which Plaintiff Crowley Maritime Corporation responded. (Docs. 20, 40). With the Court's permission National Union filed a reply. (Docs. 25, 43). On June 20, 2017, the Court held a hearing on the motion, the record of which is incorporated herein. (Doc. 49). The Magistrate Judge then conducted a settlement conference, but the parties impassed. (Doc. 52). Thus, the case is ready for a decision.

## I.   BACKGROUND

### A.   The Policy

National Union issued an Executive and Organization Liability Insurance Policy to Crowley in November, 2007. (Doc. 1 ¶ 6; Doc. 1-1 at 2).[1] The Policy limits coverage to "Claims that are first made . . . during the Policy period and reported in writing to the insurer pursuant to the terms herein." (Doc. 1-1 at 2). The Policy has a term of November 1, 2007 through November 1, 2008, and a six year run-off period to report Claims, referred to as the Discovery Period, which expired on November 1, 2013. (Doc. 1-1 at 59). The Policy also contains a relation back provision, which states:

> If during the Policy Period or during the Discovery Period (If applicable) an Organization or an Insured shall become aware of any circumstances which may reasonably be expected to give rise to a Claim being made against an Insured and shall give written notice to the Insurer of the circumstances . . . then a Claim which is subsequently made against such Insured and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances . . . shall be considered made at the time such notice of such circumstances was given.

(Doc. 1-1 ¶ 7(c)). The written notice upon which a Claim can relate back is referred to as a "notice of circumstances." (Doc. 36 at 18).

The Policy provides that the "criminal . . . investigation of an insured

---

[1] In some of the pleadings, the page numbers used by the parties do not correspond with those produced by the Court's electronic filing system. For consistency and ease of reference, this Order uses the Court filing's page numbers.

person" triggers coverage once the "insured person is identified in writing" by an "investigating authority as a person against whom" a criminal proceeding has commenced. (Doc. 1-1 ¶ 2(b)(3)(i)). The "return of an indictment, information or similar document" commences a covered criminal investigation. (Doc 1-1 ¶ 2(b)(2)). The Policy defines an "Insured Person" as any "executive of an organization; employee of an organization; or outside entity executive." (Doc. 1-1 ¶ 2(o)). Regarding coverage of defense costs, the Policy provides, "[o]nly those . . . Defense Costs which have been consented to by the Insurer shall be recoverable as loss under the terms of this Policy." (Doc. 1-1 ¶ 8). The Policy further states that "[t]he Insurer's consent shall not be unreasonably withheld." (Doc. 1-1 ¶ 8).

## B. Department of Justice Search Warrant

On April 17, 2008, the Department of Justice executed a search warrant at Crowley Liner Services, a wholly owned subsidiary of Crowley. (Doc. 1 ¶ 15). The search warrant sought to collect various documents from Crowley Liner and four named Crowley Liner employees. (Doc. 36-2 at 2, 7). Tom Farmer, a vice president of Crowley Liner, was one of the named employees. (Doc. 36-2 at 2). Farmer was also issued a subpoena on April 17, 2008. (Doc. 36-19 at 4–5).

To support the issuance of the search warrant, FBI Special Agent Byron Thompson wrote an Affidavit. (Doc. 36-2 at 10). The Affidavit listed Farmer as a "subject" of the investigation. (Doc. 36-2 at 17). However, the Affidavit was

filed under seal and remained sealed until 2015. (Doc. 1 ¶ 17; Doc. 36-17 at 2).

### C. Dispute Over Coverage and Arbitration

On April 25, 2008, Crowley provided National Union notice of a Claim under the Policy and sent National Union copies of the search warrant and Farmer's subpoena. (Doc. 36-5 at 2). Crowley also informed National Union that the Affidavit was sealed. (Doc. 1 ¶ 18; Doc. 36-5 at 4). Crowley requested that National Union advance Farmer's defense costs.[2] (Doc. 36-5 at 4). On May 27, 2008, National Union responded to Crowley's notice of the DOJ investigation, asserting that "based on the documentation currently available" the Policy did not provide coverage for Farmer because it did not identify Farmer "in writing as a target of any investigation." (Doc. 36-6 at 4). However, National Union accepted Crowley's communication as "a [N]otice of [C]ircumstances that may give rise to a Claim being made against an Insured . . . ." (Doc. 36-6 at 4). Following this response, Crowley continued to assert it had reported a Claim and National Union maintained its position that the documents Crowley submitted did not amount to a Claim. (See, e.g., Docs. 36-19, 36-20, 36-21).

Believing it was entitled to coverage, Crowley commenced an arbitration action on March 7, 2012, to recover Farmer's defense costs. (Doc. 1 ¶ 21). The

---

[2] Crowley also requested coverage for itself and three other individuals mentioned in the search warrant, but coverage of those Claims is not at issue here. (See Doc. 36-5 at 2).

parties did not obtain the Affidavit during the arbitration, and, although discussed during the proceeding, its content was not used to determine whether Crowley had submitted a Claim. (See, e.g., Doc. 36-9 at 5–6, 25–26). In a decision dated January 29, 2013, the arbitrators determined that from 2008 through 2012, "[t]he materials Crowley submitted to National Union [which did not include the sealed Affidavit] did not constitute a Claim for Injured Persons as the term 'Claim' is defined in the Policy." (Doc. 36-7 at 10).

### D. Farmer's Acquittal and Crowley's Lawsuit

During this time, the DOJ investigation continued, and in February, 2013 the government offered Farmer a plea deal, which identified him in writing as a target of a government investigation. (Doc. 36-11 at 2–3). Consequently, beginning in February, 2013, National Union agreed to cover Farmer's subsequent defense costs because the plea deal materialized before the end of the Discovery Period. (Doc. 36-11 at 3).

Farmer did not accept the plea deal, and a jury acquitted him on May 8, 2015. (Doc. 36-32 at 2). Following Farmer's acquittal, Crowley obtained a copy of the unsealed Affidavit. (Doc. 36-32 at 2). Crowley then asked National Union to cover Farmer's defense costs from the original notice of a potential claim in 2008 until February, 2013 because in 2008 the Affidavit identified Farmer as the subject of an investigation. (Doc. 36-32 at 2).

National Union continues to deny coverage and, thus, has not advanced

the defense costs Farmer accrued from April, 2008 to February, 2013, which are alleged to be in excess of $2.5 million. (Doc. 36-33 at 2–3). Crowley filed this breach of contract action to recover Farmer's defense costs. (Doc. 1). National Union moved to dismiss the complaint on the grounds that the action was precluded by the prior arbitration and barred by the statute of limitations. (Doc. 15). The Court converted the motion to dismiss into one for summary judgment. (Doc. 28). The parties conducted discovery and filed supplemental briefing. The Court held a hearing on the motion. (Doc. 49).

National Union seeks summary judgment on three grounds. First, National Union claims the arbitration award determined that Crowley had no duty to pay Farmer's defense costs from 2008 through 2012 and thus precludes this action.[3] (Doc. 16 at 7–9). Second, National Union asserts that this breach of contract action is barred by the five-year statute of limitations because it alleges a breach occurring in 2008, but was not filed until 2016. (Doc. 16 at 10). Third, National Union argues that the claim is untimely because the Affidavit was unsealed and presented to it in 2015, after the Discovery Period.[4] (Doc. 25

---

[3] Although the parties—and the wealth of case law—couch the issue as one of res judicata, the Supreme Court has explained that res judicata often has different and conflicting definitions. Baker v. Gen. Motors Corp., 522 U.S. 222, 233 n.5 (1998). Thus, this Court will use the more precise terminology adopted by the Supreme Court: claim preclusion. Id.

[4] Crowley claims that National Union's argument based on the Discovery Period should be rejected because National Union did not raise it until its reply. (Doc. 36 at 17–18). However, the Court converted National Union's motion to

at 6–7; Doc. 37 at 12–16).

Crowley contends that the arbitration panel only determined whether Crowley had submitted a Claim to National Union at that time, and because the Affidavit was sealed during arbitration, whether the Affidavit constitutes a Claim could not have been adjudicated in the arbitration. (Doc. 20 at 2–3). Further, Crowley argues that the 2015 demand for reimbursement of Farmer's defense costs relates back to its 2008 notice of circumstances, making it timely under the Discovery Period. (Doc. 36 at 18; see Doc. 1-1 ¶ 7(c)). However, Crowley also argues that the statute of limitations did not begin to run until 2015, when it presented the Affidavit to National Union. (Doc. 20 at 3).

## II.   ANALYSIS

The resolution of this case depends on when Crowley reported a Claim for payment of Farmer's defense costs based on the Affidavit. The answer is a catch-22 for Crowley: if it was in 2008, then Crowley is precluded from relitigating the issue; if it was in 2015, Crowley's demand is barred by the plain text of the Policy's Discovery Period. As detailed below, the Court finds that Crowley's

---

dismiss into a motion for summary judgment and allowed the parties to supplement their briefing. (Doc. 28 at 1). National Union appropriately raised the Discovery Period timeliness issue in its supplement. (Doc. 25 at 6–7). Thus, National Union did not waive it. Further, both parties devoted additional briefing to the issue, (Doc. 36 at 17–19; Doc. 37 at 1, 9, 12–16; Doc. 40 at 5; Doc. 43 at 5–6), and both parties addressed this issue during the hearing. (Doc. 49 at 36–46). Therefore, neither party can claim to be surprised or prejudiced by the Court considering this issue.

demand for payment based on the Affidavit occurred in 2015, and, thus, was untimely under the Policy.

### A. Crowley's Claim based on the Affidavit is not precluded by the prior arbitration.

The Constitution's Full Faith and Credit clause gives nationwide force to valid state court judgments. <u>Baker</u>, 522 U.S. at 233. To determine the effect of a state judgment in federal court, the rendering state's preclusion rules apply. <u>Lozman v. City of Riviera Beach</u>, 713 F.3d 1066, 1074 (11th Cir. 2013). The arbitration award was rendered in Florida, (Doc. 36-7 at 2), and Florida equates a valid binding arbitration award to a court judgment. <u>See, e.g.</u>, <u>Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 945 So. 2d 1216, 1235 (Fla. 2006) (implying that a prior arbitration containing the same four identities will preclude the subsequent court action); <u>Bank of Am., N.A. v. Beverly</u>, 183 So. 3d 1099, 1102 (Fla. 4th DCA 2015) (holding that "res judicata and collateral estoppel" apply to a prior arbitration if the two actions have the required identities); <u>Bates v. Betty & Ross Co.</u>, 46 So. 3d 615, 617 (Fla. 3d DCA 2010) ("[A] determination made during an arbitration proceeding can provide an appropriate foundation for the application of collateral estoppel.") (quoting <u>Dadeland</u>, 945 So. 2d at 1235); <u>ICC Chem. Corp. v. Freeman</u>, 640 So. 2d 92, 93 (Fla. 3d DCA 1994) (upholding the dismissal of a case because it was precluded by a prior arbitration).

In Florida, claim preclusion bars a subsequent action for "matters actually raised and determined in the original proceeding and also to matters which could have properly been raised and determined." Id. For claim preclusion to apply the two actions must share four identities: "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties; and (4) identity of the quality [or capacity] of the persons for or against whom the claim is made." Lozman, 713 F.3d at 1074 (citations and internal quotation marks omitted) (applying Florida law). Claim preclusion requires that "the original claim was disposed on the merits." Id. The party asserting claim preclusion has the burden of proving that the four identities exist and that the matter was formally adjudicated on the merits. State St. Bank & Tr. Co. v. Badra, 765 So. 2d 251, 253 (Fla. 4th DCA 2000).

Crowley and National Union acknowledge that three of the required identities link the arbitration and current action: (1) the identity of the thing sued for—Farmer's defense costs from 2008 through 2012; (2) the identity of the persons and parties—Crowley and National Union; and (3) the identity of the quality of the persons for or against whom the claim is made—National Union is the adverse party in both actions. (Doc. 25 at 3). Thus, National Union must show that no genuine issue of material fact exists concerning the identity of the cause of action. See Lozman, 713 F.3d at 1077; Badra, 765 So. 2d at 253.

To determine whether two proceedings share an identity of the cause of

action, the Court "must consider [whether] the relationship between the facts and issues asserted [] constitutes a single transaction." <u>AMEC Civil, LLC v. Fla. Dep't of Transp.</u>, 41 So. 3d 235, 240 (Fla. 1st DCA 2010) (citing <u>Gordon v. Gordon</u>, 36 So. 2d 774 (Fla. 1948)). Further, Florida does not have an expansive definition of "cause of action;" instead, "allegations of separate, wrongful acts give rise to separate causes of action, even if the wrongful acts occurred within the context of a larger set of facts or relationship." <u>Lozman</u>, 713 F.3d at 1077.

Florida also uses a transaction test, which precludes actually litigated causes of action and every other matter that might have been litigated within that same transaction or series of transactions. <u>See</u> <u>id.</u> at 1078. However, "[d]espite the broad 'every other matter' language, the transaction test is 'narrow' and extends to essentially connected claims that a defendant in a former action failed to raise as a defense." <u>Id.</u> at 1078 (quotations omitted).

Subsequent claims are only precluded if the facts and conditions at the time of the first judgment are the same in relation to the legal rights and issues of the second judgment. <u>Badra</u>, 765 So. 2d at 253 (citing <u>Hialeah Race Course, Inc. v. Gulfstream Park Racing Ass'n, Inc.</u>, 245 So. 2d 625, 628 (Fla. 1971)). "When other facts or conditions intervene before the second suit, furnishing a new basis for the claims and defenses of the respective parties, the issues are no longer the same and the former judgment cannot be pleaded in bar of the second action." <u>Id.</u> at 254. In <u>Badra</u>, the trial court determined that State Street

failed to provide proper notice of acceleration of payment for a purchase money mortgage. Id. at 253. Six days after trial, State Street sent a corrected notice of acceleration, and eleven months later filed an identical complaint against Badra. Id. In holding that the two suits did not share the identity of the cause of action, the Fourth District Court of Appeal stated: "Since the first and second actions involved different notices of acceleration and such letters were essential to the maintenance of each action, there existed essential facts between the two cases which differed." Id. at 254.

Causes of action based on different evidence, especially facts occurring after the initial suit, are not precluded by prior adjudications. Lozman, 713 F.3d at 1076. In Lozman, the City of Riveria Beach filed an eviction action against Lozman. Id. at 1070. Lozman's second amended counterclaim alleged various violations of his constitutional rights by the City. Id. The eviction claim was severed from the counterclaim, which was subsequently dismissed without prejudice based on an agreement between the parties. Id. Lozman then filed an action in federal court. Id. at 1072. The Eleventh Circuit determined the federal claims were not precluded by the state eviction action because the conduct alleged in the two actions were distinct. Id. at 1076. Since the federal claim relied on conduct that had not yet occurred when the state action was filed, the causes of action were not identical. Id.

National Union contends that this suit is the same cause of action as the

arbitration because it arises out of the same transaction or series of transactions. (Doc. 16 at 8); see Trustmark Ins. Co. v. ESLU, Inc., 299 F.3d 1265 (11th Cir. 2002); AMEC, 41 So. 3d at 243. In Trustmark, the plaintiff filed a breach of contract claim in state court. Trustmark, 299 F.3d at 1269–71. Later, the plaintiff learned of additional breaches and attempted to amend its state court complaint to include these additional claims. Id. The court denied the motion to amend, and a jury returned a verdict in favor of the defendant. Id. at 1266–67. The plaintiff then filed a second suit in federal court asserting the additional claims it previously attempted to include in the state court suit. Id. at 1267. In affirming dismissal, the Eleventh Circuit noted, "[a] series of breaches of the same contract, all occurring before filing suit, should be brought in that suit." Id. at 1270.[5]

---

[5] The precedential value of Trustmark for this case is unclear. Although the underlying causes of action in Trustmark are likely Florida law claims, neither the Eleventh Circuit, nor the district court, cited any Florida case law when discussing claim preclusion. See Trustmark, 299 F.3d at 1269–71; Trustmark Ins. Co. v. ESLU, Inc., 153 F. Supp. 2d 1322, 1328–32 (M.D. Fla. 2001). Both cases cite prior Eleventh Circuit opinions discussing claim and issue preclusion under Eleventh Circuit precedent, not Florida precedent. See, e.g., In re Piper Aircraft Corp., 244 F.3d 1289, 1296 (11th Cir. 2001). However, the Supreme Court's decision in Semtek International, Inc. v. Lockheed Martin Corp., 531 U.S. 497 (2001) mandates that federal courts sitting in diversity, such as this case, use the preclusion rules of the state in which they are located. Although "[a] comparison between Florida rules and federal rules governing claim and issue preclusion reveals that the relevant principles are largely identical," SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 764 F.3d 1327, 1337 (11th Cir. 2014), it appears that Trustmark was not decided under Florida preclusion law. See Trustmark, 299 F.3d at 1269–71 (citing In re Piper, 244

Similarly, the First District Court of Appeal stated that when a cause of action is breach of an indivisible contract, all claims of breach for that contract should be brought in a single action. AMEC, 41 So. 3d at 243. In AMEC, the parties' contract established a dispute review board ("DRB"), but the DRB's decisions were not binding. Id. at 236. After submitting claims to the DRB, AMEC filed suit in state court alleging breach of contract. Id. 237. While that case was pending, AMEC filed an additional sixty claims with the DRB. Id. A jury returned a verdict in AMEC's favor, but the remaining DRB claims had stalled. Id. at 238. When AMEC filed a second suit alleging the remaining breaches of contract, the First District Court of Appeal barred the action. The court held "[o]nly AMEC's strategic choice prevented the joinder of all claims. . . . [T]he numerous alleged breaches of the indivisible contract could with propriety have been litigated and determined in a single action." Id. at 243 (citations and quotations omitted).

National Union argues that the Affidavit arose out of the same transaction as the issue arbitrated: "Crowley's demand for coverage for Mr. Farmer's attorney's fees and National Union's denial of that demand." (Doc. 37 at 7); see Trustmark, 299 F.3d at 1269–71. National Union's framing of the arbitration issue is flawed—it cannot be as broad as the demand and denial of

---

F.3d at 1296). Thus, its precedential value here is questionable.

Farmer's attorneys' fees. Shortly after the arbitration panel determined that Crowley had not made a Claim under the Policy, National Union accepted Farmer's plea deal as sufficient to trigger coverage. (Doc. 37 at 4). If Farmer's plea deal was not precluded by the arbitration because it was a subsequent trigger of coverage, then the Affidavit, unsealed and submitted years after the arbitration, is also a separate Claim for coverage that is not precluded. See Lozman, 713 F.3d at 1077; Badra, 765 So. 2d at 253; (Doc. 37 at 4).

Additionally, framing the arbitration issue as "recovery of the legal fees incurred by [] Farmer from 2008 through 2013" is also incorrect. (See Doc. 37 at 7). The arbitration panel only determined whether the documentation that Crowley had submitted to National Union at that point in time constituted a Claim under the Policy. (Doc. 36-7 at 6).[6] Crowley did not submit the Affidavit to National Union because it was still sealed. (Doc. 36-7 at 6).

Crowley's suit is not precluded by the 2012 arbitration because the arbitration award only determined that at that point in time, Crowley had not made a "Claim," as that term is defined by the Policy. See Lozman, 713 F.3d at 1074; (Doc. 36-7 at 6, 10). Similar to Badra, the documents submitted to the

---

[6] The arbitration panel examined "the search warrant, the Farmer subpoena, the Crowley subpoena, the Term Sheet, the [Crowley] Plea Agreement, the [Crowley] Plea Agreement Supplement, and the Investigation related thereto." (Doc. 36-7 at 6).

arbitration panel did not include the Affidavit,[7] and because the Affidavit is material to determining whether Crowley has made a Claim under the Policy, the essential facts between the arbitration and this action differ. See Badra, 765 So. 2d at 253; (Doc. 36-7 at 6, 10).

Analyzing the facts of the two actions in relation to the issues and rights of the parties, see Badra, 765 So. 2d at 253, the unsealing of the Affidavit made Crowley's 2015 demand a distinct "Claim." See Lozman, 713 F.3d at 1077. As the Eleventh Circuit explained in Lozman, a subsequent suit based on facts and evidence not in existence during the prior suit is not precluded by the prior suit. Id. at 1076. Therefore, the two actions would be separate breach of contract claims alleging separate wrongful acts by National Union: (1) not paying Farmer's defense costs based on what Crowley had submitted to National Union at the time of the arbitration; and (2) not paying Farmer's defense costs based on Crowley's 2015 submission of the Affidavit. See id. (holding that Florida's definition of cause of action is narrow and that "separate, wrongful acts give

---

[7] The Arbitration Award states that the content of the Affidavit was inferable. (Doc. 36-7 at 3). However, the award concludes that "[t]he materials Crowley submitted to National Union did not constitute a Claim for Insured Persons as the term "Claim" is defined in the Policy." (Doc. 36-7 at 10). As Crowley was unable to submit the sealed Affidavit to National Union, it could not have been considered by the arbitration panel. Further, National Union itself argued to the panel that the Affidavit should not be considered as part of the evidence in determining whether Crowley had made a claim as of that date. (Doc. 36 at 10).

rise to separate causes of action, even if the wrongful acts occurred within the context of a larger set of facts or relationship.").

Although Trustmark and AMEC appear at first blush to dictate preclusion of Crowley's suit, those cases are distinguishable. Trustmark, 299 F.3d at 1270; AMEC, 41 So. 3d at 243. Both based their decisions on the theory that known breaches of the same contract should be litigated together. See Trustmark, 299 F.3d at 1271; AMEC, 41 So. 3d at 243. However, here neither party knew the content of the Affidavit.[8] See Trustmark, 299 F.3d at 1272 (indicating that situations "in which the plaintiff had no means of knowing that a party breached the contract" would not be barred); (Doc. 20 at 5; Doc. 37 at 7). Contrary to National Union's allegations that the Affidavit is "just the later discovery of an old fact[,]" (Doc. 37 at 7) (emphasis in original), the Affidavit is more like newly discovered evidence because neither party had a reasonable ability to discover its content. See Hialeah Race Course, 245 So. 2d at 628; (Doc. 20 at 5; Doc. 37 at 7). National Union alleges that unattainable evidence known

---

[8] National Union's allegation that Crowley is to blame because it failed to file a motion to unseal the Affidavit earlier is not persuasive. (Doc. 37 at 7 n.2). Given the factual background of the underlying case, and the Court's familiarity with federal criminal proceedings, it is unlikely that a court would have been willing to jeopardize the ongoing investigation by unsealing the Affidavit just to help Crowley get insurance coverage. See generally, Bennett v. United States, No. 12–61499–CIV, 2013 WL 3821625, at *2–*8 (S.D. Fla. July 23, 2013) (explaining that the government's compelling interest in preventing prejudice to an ongoing investigation can outweigh the constitutional rights to access court documents).

to exist should be treated the same as attainable evidence that a party fails to discover. (Doc. 37 at 7). However, this would penalize Crowley for circumstances outside of its control.

Additionally, the Policy is not an indivisible contract like the one analyzed in <u>AMEC</u>. <u>See</u> <u>AMEC</u>, 41 So. 3d at 240 (explaining an indivisible contract); <u>see also</u> 15 <u>Williston on Contracts</u> § 45:16 (4th ed.). The Policy contemplated insurance for different insureds and multiple potential covered liabilities. (<u>See</u> Doc. 1-1 at 8–10). As <u>Williston</u> notes, when items are valued separately and distinctly in an insurance policy, the contract is divisible as to each different type, even if the premium is paid in gross. <u>Williston</u> § 45:16. An insurance contract that insures multiple parties for multiple different occurrences cannot be treated like the indivisible policy in <u>AMEC</u>. <u>See</u> <u>AMEC</u>, 41 So. 3d at 240; <u>Williston</u> § 45:16. Such treatment would require an insured to "save up" all of his breach claims until the end of the reporting period, otherwise the insured would risk losing the ability to sue for subsequent breaches.

Therefore, Crowley's 2015 reporting of a Claim for Farmer's defense costs based on the Affidavit is not precluded by the prior arbitration because the report was based on new factual circumstances. <u>See</u> <u>Badra</u>, 765 So. 2d at 253. However, precisely the reason that the Claim based on the Affidavit is not precluded by the arbitration—it was not reported until 2015 based on the new circumstances of the unsealing of the Affidavit—renders the Claim and its

reporting untimely under the Policy. It is to this issue the Court now turns.

## B. Crowley's claim is untimely.

Although National Union and Crowley each argue whether the statute of limitations bars this claim, the Court need not address those arguments because under the plain language of the Policy, Crowley's reporting of the Claim is untimely. (<u>See</u> Doc. 1-1 at 59). Endorsement #14 of the Policy states: "The Named Entity shall have the right to a period of six [] years following the Effective Date (herein referred to as the Discovery Period) in which to give written notice to the insurer of any Claim . . . ." (Doc. 1-1 at 59). The Effective Date of the Policy is November 1, 2007 and the Discovery Period ended November 1, 2013. (Doc. 36 at 19).

A claims-made-and-reported policy is a policy that provides coverage for the specific acts and omissions outlined in the policy that are reported during the policy term. <u>Jennings Constr. Servs. Corp. v. ACE Am. Ins. Co.</u>, 783 F. Supp. 2d 1209, 1212–13 (M.D. Fla. 2011); <u>Gulf Ins. Co. v. Dolan, Fertig & Curtis</u>, 433 So. 2d 512, 514 (Fla. 1983). Contrary to an occurrence policy, where "failure to timely report a claim . . . may not preclude coverage unless prejudice is established[,]" under a claims-made-and-reported policy, "if the claim is not reported during the policy period, no liability attaches." <u>Jennings</u>, 783 F. Supp. 2d at 1212–13 (citations and quotations omitted). The first page of the Policy states that coverage is limited to those claims that occur and are <u>reported</u>

"pursuant to the terms herein." (Doc. 1-1 at 2) (emphasis added). Because Endorsement #14 provides a Discovery Period for when all Claims must be made, the Policy is a claims-made-and-reported policy. (Doc. 1-1 at 2, 59).

Crowley argues that even though it was unable to present the content of the Affidavit to National Union until July 22, 2015, the Affidavit has a "Claim" date of April 25, 2008— the date Crowley first provided notice of a claim. (Doc. 36 at 18). Crowley relies on section 7(c) of the Policy, which allows a subsequent Claim to relate back to an earlier filed notice of circumstances. (Doc. 1-1 at 16). Thus, Crowley alleges that the July 22, 2015 disclosure of the content of the Affidavit relates back to the April 25, 2008 Notice of Circumstances. (Doc. 36 at 18).

However, Crowley cannot contend that the Affidavit was included in the 2008 Notice of Circumstances, making it timely under the Policy, but was not part of the 2008 materials for preclusion purposes. Compare (Doc. 36 at 10) (Crowley stating that the Affidavit was not included as part of the claim arbitrated because it was under seal until 2015) with (Doc. 36 at 18) (Crowley stating that the DOJ investigation was reported to National Union in 2008 and the Affidavit was part of that investigation). Crowley reported the Claim based on the Affidavit in 2015—after the Discovery Period ended. If the reporting of the Claim based on the Affidavit were to relate back to the 2008 Notice of Circumstances, as Crowley argues, then it would be precluded by the

arbitration.[9] The arbitrators determined that everything Crowley had submitted to National Union through 2012 did not amount to a Claim. (See Doc. 36-7 at 6). If the Affidavit were to relate back to 2008 (even though its content was unknown), then it would not be a change in circumstances or new evidence from that considered by the arbitrators—and the identity of the cause of action would be the same.[10] See Lozman, 713 F.3d at 1076. Conversely, once the Affidavit was unsealed in 2015, it became a change in circumstances because its content was previously unknown, and the Claim based upon its content was not reported to National Union until that time. See Jennings, 783 F. Supp. 2d at 1212–13; Badra, 765 So. 2d at 253; Lozman, 713 F.3d at 1076.

Such an outcome is not unfair. The Policy has a limited period in which Claims can be reported, and Claims reported outside of that period—regardless

---

[9] National Union continually argues that the Policy does not allow relation back to a "Claim" that predates a notice of circumstances. (Doc. 37 at 15). It contends that Crowley provided a notice of circumstances on April 25, 2008, but that the Affidavit was a "Claim" on April 16, 2008. (Doc. 37 at 15). This argument is unavailing because National Union cannot have the Affidavit be a "Claim" in 2008 for preclusion and relation back purposes, but a "Claim" in 2015 as it relates to the Discovery Period.

[10] Crowley concedes as much by stating that under the relation back provision, the claim related to the Affidavit would be "considered made when the notice of circumstances was given (i.e. April 25, 2008) because it involves the same or related Wrongful Acts as those involved in the April 2008 notice to [National Union]." (Doc. 36 at 19) (quotations omitted). If the Affidavit is considered a Claim reported in 2008 and involves the same wrongful acts as those arbitrated, then it would be precluded. But, it is not precluded because the unsealing of the Affidavit was not reported until 2015.

of the circumstances—are not covered. See Jennings, 783 F. Supp. 2d at 1212–13; (Doc. 1-1 at 2, 59). The parties are sophisticated businesses that agreed to the Policy. See Gulf Ins., 433 So. 2d at 514–15 (explaining that claims-made-and-reported policies are not against public policy and that the parties can negotiate the reporting period in relation to the premium).

Crowley asserts that National Union's argument prevents recovery under any circumstance because its demand would be untimely under either the statute of limitations if made in 2008, or the Discovery Period if made in 2015. (Doc. 40 at 4–5; Doc. 49 at 39–46). This is only true here because Crowley made the strategic decision to arbitrate without knowing the content of the Affidavit. Crowley's 2008 Notice of Circumstances was not a demand for payment until it insisted that the materials submitted constituted a "Claim," and elected to arbitrate. Had Crowley won the arbitration it would not have filed this suit. But it lost. Had Crowley waited until it had actual evidence identifying Farmer as the subject of an investigation—such as when Farmer received his plea agreement in February, 2013 (before the Discovery Period expired)—its Claim likely would have been covered for the entire period.[11]

---

[11] Had Crowley forgone arbitration, the unsealing of the Affidavit in 2015 could relate back to the 2008 Notice of Circumstances. By only granting prospective defense costs after receiving Farmer's plea agreement, National Union would be partially breaching the contract. This breach would have occurred in 2013—the date of Farmer's plea agreement—and, thus, the five-year statute of limitations would not bar the current suit. The 2015 unsealing

### III. CONCLUSION

Although the Affidavit existed in 2008, its content was unknown and unattainable until 2015, and it was at that time that Crowley demanded coverage based upon the Affidavit. But at that time, the Discovery Period had expired so Crowley's reporting of the Claim was untimely. Alternatively, if, contrary to the Court's decision, the Claim based on the Affidavit is deemed reported in 2008, Crowley is precluded from bringing this action because of the intervening arbitration decision. Either way, Crowley cannot recover.

Accordingly, it is hereby

**ORDERED:**

1. Defendant National Union's converted Motion for Summary Judgment (Doc. 15) is **GRANTED**.

2. The Clerk shall enter judgment in favor of Defendant, National Union Fire Insurance Company of Pittsburgh, Pa. and against Plaintiff Crowley Maritime Corporation, terminate all pending motions and deadlines, and close the file.

---

of the Affidavit would relate back to the 2008 Notice of Circumstances and be timely under the Discovery Period. But this is not what Crowley chose to do.

**DONE AND ORDERED** in Jacksonville, Florida this 8th day of February, 2018.

TIMOTHY J. CORRIGAN
United States District Judge

jjb
Copies:

Counsel of record